[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before the court is the defendant's motion for a new trial or in the alternative a remittitur. Jurisdiction in this court is pursuant to R.C.P. 59.
The jury in this civil action returned a verdict for plaintiff in the amount of $480,000. In response to specific interrogatories, the jury found that defendant was negligent; that such negligence was the proximate cause of plaintiff's injuries; and that plaintiff's injuries had been reduced by 20% for his comparative negligence. Judgment for plaintiff plus interest and costs was entered forthwith.
Defendant thereafter filed the instant motion for a new trial or remittitur on the grounds that the verdict was against the evidence, contrary to the facts, against the facts and the evidence, failed to respond to the merits of the matter, and failed to administer substantial justice. The duty of a trial justice in ruling on such a motion is to consider in the exercise of his or her independent judgment all of the material evidence in the case in the light of his or her charge to the jury and to pass on its weight and the credibility of the witnesses. Barbatov. Epstein, 97 R.I. 191, 196 A.2d 836 (1964). In discharging that duty he or she can accept some or all of the evidence as having probative force; or he or she can reject some of the testimony because it is impeached or contradicted by other positive testimony or by circumstantial evidence, or because of inherent improbabilities or contradictions which alone or in connection with other circumstances satisfies him or her of its falsity, or because it is totally at variance with undisputed physical facts or laws; or he or she can add to the evidence by drawing proper inferences therefrom and giving weight thereto. If the evidence is evenly balanced or is such that reasonable minds could arrive at different conclusions, the motion should be denied. Only if the trial justice determines that the jury's verdict is clearly wrong because it fails to respond truly to the merits of the controversy and to administer substantial justice or if it is against the weight of the evidence should the motion be granted.
In the instant case plaintiff testified that he sustained injuries in 1983 when he slipped and fell down a flight of stairs located on the premises of the defendant. Specifically, evidence was presented that at the time of the accident the stairs were covered with snow and ice and were in a state of disrepair. Plaintiff presented sufficient evidence indicating that the stairs were negligently maintained by the defendant. Evidence was also presented that as a result of the fall plaintiff was hospitalized for five days. The court finds that the jury could reasonably find that the defendant was negligent in maintaining the stairs, that such negligence proximately caused defendant to fall, and that defendant was injured as a result of this fall. Therefore, the motion for a new trial on the issue of liability is denied.
The court now turns to defendant's motion for a new trial on the issue of damages. In considering a motion for a new trial on the issue of damages, the trial justice must exercise his independent judgment on all the evidence material to the question of damages, weigh such evidence, and pass on the credibility of witnesses. The trial justice may disregard the jury's award "only if it shocks the conscience or clearly demonstrates that the jury was influenced by passion or prejudice, or that it proceeded upon a clearly erroneous basis in arriving at its award." Yammerinov. Cranston Tennis Club, Inc., 416 A.2d 698, 700 (R.I. 1980).
In the instant case, the court finds that the award of $480,000 was so grossly excessive that it "shocks the court's conscience to the point that it is forced to conclude that the jury was motivated or moved by exaggerated sympathy or passion or prejudice, and was not responding rationally to the evidence presented on damages." Id. Quite simply, the court finds that the plaintiff's testimony was totally, thoroughly and consistently lacking in credibility.
Plaintiff repeatedly either misstated or contradicted the other material evidence presented. Specifically, the court notes the following inconsistencies. Plaintiff initially denied that he had tried to work anywhere since the accident, but in fact he had worked at Tri County Marina in 1986 — his pay stubs were introduced into evidence -[1] and had thereafter entered into a business partnership with one Jerome Reis. Although the business was called "Duraclean by Ron,"[2] plaintiff alleged that he was only a silent partner in the business. However, plaintiff later acknowledged that his name was on the "Duraclean" business card, that he had attended a business convention concerning said business, and that he was a member of the Chamber of Commerce. Plaintiff further testified that his symptoms were so severe at that time that he could not even answer the telephone at Duraclean. His spouse testified that he could not even say "hello" or "goodnight." These conditions are simply not believable. One of plaintiff's own witnesses contradicted these allegations when he testified that he had spoken extensively with plaintiff over the telephone at that time and that plaintiff had no difficulty communicating or concentrating. Plaintiff's testimony that he was told to move to Florida for medical reasons was neither persuasive nor corroborated by any medical evidence whatsoever. Although plaintiff alleged that because of his injuries he could no longer operate or enjoy his sailboat, he later admitted to having shipped the boat to Florida and to having brought the boat to Tri County Marina for repairs. A witness testified that she saw plaintiff on the boat. Plaintiff's testimony under oath both at trial and in deposition, is replete with acknowledged false statements.
Furthermore, there are serious inconsistencies with respect to the medical evidence in this case. Medical records indicate that plaintiff gave a false medical history to his physicians. Records from St. Joseph's Hospital indicate that while plaintiff was a patient there in July 1980, he gave a history of having had back problems relating as far back as during his days in the service. The St. Joseph records indicate a C-7 nerve root problem. However, when Dr. Triedman found the nerve root problem in 1985, the plaintiff denied that the problem had existed prior to the accident. Rather, plaintiff specifically told Triedman that he had no history of the problem and that he had enjoyed excellent health until the accident. Plaintiff also failed to disclose his history to Dr. Trott. Rather, he indicated to Trott, as he had to Triedman, that he was in excellent health prior to the accident. The only consistency in plaintiff's testimony was his inability to tell the truth. He repeatedly failed — time after time, year after year, to present his own treating physicians with any accurate medical history.
The medical records further contradict the plaintiff's allegations. From 1983, the year of the accident, until 1990, plaintiff underwent a series of tests which failed to disclose any positive findings. X-rays, myelogram and cat scan performed from 1983 to 1990 were all negative. Although he spent five days undergoing tests at Kent County Hospital immediately after the accident in 1983, his discharge summary indicated that nothing objective was found. Dr. Trott found nothing wrong with plaintiff other than strains during the two years that he treated him. In 1985 Dr. Cotter made no objective findings whatsoever and further indicated that plaintiff was not cooperating. In the absence of any objective findings, plaintiff's doctors relied entirely on plaintiff's subjective complaints regarding chronic neck and low back pain. Not until 1990, a full seven years after the accident, did an MRI indicate the presence of a "slight disc bulge," which, according to expert testimony, could have occurred from any number of things, including a sneeze. Plaintiff presented no evidence to causally link the "slight disc bulge" found in 1990 to the 1983 accident.
Finally, where plaintiff's experts testified that plaintiff is presently only 12% impaired, the court rejects the testimony presented that plaintiff is incapable of holding any job anywhere in the United States. Accordingly, this court also rejects the testimony of Dr. Mead, who, in testifying as to loss of future income erroneously based his figures on a total and complete inability to work.
From its review of the foregoing evidence, the court is satisfied that the jury was influenced by exaggerated sympathy or passion or prejudice. The court finds that the jury failed to respond to the merits or the facts and evidence, rendered a verdict both contrary to the facts and evidence and thereby did a substantial injustice.
For the reasons herein, the court finds that the jury's verdict is grossly excessive. The court further finds that the sum of $50,000 would adequately compensate the plaintiff for damages allegedly sustained as a result of the 1983 accident. Accordingly, unless the plaintiff will remit all of the jury's $480,000 verdict in excess of $50,000, the court orders a new trial solely on the issue of damages.
Counsel shall prepare a judgment order consistent with this decision.
[1] He advised a Florida cohort that he was leaving his job at Tri County due to a "spot on the pancreas." This statement was untrue.
[2] Plaintiff's first name is Ron.